UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KOBY BRYANT SOLOMON, (A 232-948-671),

Petitioner,

v.

WARDEN, MESA VERDE DETENTION FACILITY,

Respondent.

No. 1:26-cv-05830-DJC-CKD

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## I. Factual and Procedural History

Petitioner, a citizen of the Bahamas, entered the United States lawfully on December 18, 2015 using a B-2 visitor visa which authorized his presence in the U.S. until June 17, 2016. ECF No. 13-1 at 2. He has remained in the U.S. ever since. In August 2023, he submitted an asylum application to U.S. Citizenship & Immigration Services ("USCIS"), which issued him an employment authorization document ("EAD") valid until February 2029. ECF No. 10-1; 10-2. Before detention, Petitioner had been living in Florida and working at Walmart. ECF No. 11-3 at 2. After Hurricane Milton struck Miami in 2024, Petitioner volunteered to help hurricane victims,

as he had done in the past. Id. at 2-3. He also provided support to his younger brother, who has autism. Id. at 6. Petitioner is engaged to a U.S. citizen, who gave birth to their first child during Petitioner's detention. Id.; ECF 10-3 at 2-4.

On January 11, 2026, Petitioner was arrested and charged under Florida Statute § 810.02(2)(a) (burglary with assault or battery). ECF No. 13-2. The same day, U.S. Immigration and Customs Enforcement ("ICE") placed an immigration hold on Petitioner and initiated removal proceedings against him. ECF No. 11-3 at 4; 13-1. When Petitioner went to repay the bond amount in the criminal matter on January 17, 2026, ICE detained him. ECF No. 11-3 at 4. The State of Florida ultimately declined to prosecute the criminal matter, which was then closed in February 2026. ECF No. 13-2 at 1.

Petitioner has had three custody hearings before an immigration judge ("IJ"). The first, on March 5, 2026, resulted in "no action." ECF No. 13-3 at 1-2. At the second, on March 26, 2026, the IJ denied bond, stating only "flight risk" and "237."[1] Id. at 3-4. An IJ denied bond again on June 30, 2026, finding that Petitioner had not shown materially changed circumstances. Id. at 5-6. Petitioner did not appeal either of these bond decisions. ECF No. 13 at 2.

On July 27, 2026, Petitioner filed a pro se petition for writ of habeas corpus, claiming that prolonged detention without an individualized bond hearing where the government bears the burden of proof violates his Fifth Amendment due process rights. ECF No. 1. After appointment of counsel, Petitioner filed an amended petition and a motion for temporary restraining order. ECF No. 10; 11. The amended petition claims that Petitioner's detention without a pre-deprivation hearing violates the Due Process Clause.[2] Id. Respondent opposes both, arguing that Petitioner has received all process due to him and that he has not exhausted available administrative remedies. ECF No.13.

---

[1] The "237" notation is likely referring to the alleged ground of inadmissibility under I.N.A. § 237(a)(1)(B), 8 U.S.C. 1227(a)(1)(B). See Notice to Appear, ECF No. 13-1 at 4.

[2] Petitioner raised two additional claims. The undersigned need not address Claim Two regarding detention pursuant to 8 U.S.C. § 1225(b), as Respondent agrees that § 1226(a) governs Petitioner's detention. In the interest of judicial economy, and because the undersigned is recommending release on Count One, it is not necessary to address Count Three regarding prolonged detention, nor Petitioner's arguments regarding the timing of the warrants and the adequacy of the bond hearings.

On September 30, 2026, an IJ entered an order of removal against Petitioner. See EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/. The deadline to appeal the removal order is October 30, 2026. Id.

**II. Relevant Statutory Detention Authority**

The parties do not dispute that 8 U.S.C. §1226(a) governs Petitioner's detention.[3] Noncitizens present in the U.S. and subject to removal proceedings may be detained or released on bond or conditional parole. 8 U.S.C. § 1226(a)(2). When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. See 8 C.F.R. § 236.1(c)(8). After this initial custody determination, the noncitizen may request a bond redetermination by an IJ, which is appealable to the Board of Immigration Appeals ("BIA"). 8 C.F.R. §§ 236.1(d)(1); 1003.19(f). A noncitizen may request a subsequent bond redetermination upon a showing of materially changed circumstances. 8 C.F.R. § 1003.19(e). Though the Ninth Circuit has found that § 1226(a) offers constitutionally sufficient procedural safeguards, it has not foreclosed as-applied challenges to §1226(a) detention. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1213 (9th Cir. 2022).

**III. Exhaustion**

Respondent asserts that prudential exhaustion bars relief in this matter because the Ninth Circuit requires exhaustion of the Executive Office for Immigration Review ("EOIR") appeal process before granting habeas relief from a §1226 bond determination. ECF No. 3 at 4, citing Leonardo v. Crawford, 646 F.3d 1157, 1160–61 (9th Cir. 2011).

The exhaustion requirement under § 2241 is prudential rather than jurisdictional. Castro-Cortez v. INS, 239 F.3d 1037, 1047 n. 11 (9th Cir. 2001), *abrogated on other grounds by* Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006). Courts may require exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the

[3] Should Petitioner choose not to appeal the removal order by October 30, 2026, he would then become subject to a final order of removal and the detention authority would shift to 8 U.S.C. §1231. Otherwise, § 1226(a) remains the proper detention authority for the duration of the appeal.

administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Where the Puga factors weigh in favor of requiring exhaustion, such requirement may be waived. The Ninth Circuit has found it appropriate to waive exhaustion where administrative remedies would be inadequate or pursuit of such would be futile, irreparable injury would result, or the petition poses a substantial constitutional question or issue separate from the administrative remedy itself. Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004).

The undersigned finds that this matter merits a waiver of the exhaustion requirement because the petition poses a constitutional issue separate from the available administrative remedy. Petitioner is not seeking a hearing pursuant to §1226(a), nor is he asking the Court to re-adjudicate the bond hearing. Rather, Petitioner asks the Court to declare that his detention without a pre-deprivation hearing violated due process, which is not an issue over which EOIR has jurisdiction.

**IV. Due Process**

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). Courts examine procedural due process claims in two steps. The first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

**A. Liberty Interest**

Several courts in this district have found that petitioners who have remained in the U.S.

beyond their authorized period of stay have a protected liberty interest where, as here, ICE did not take action to detain them within a reasonable time after discovering the overstay. See, e.g., Kalkan v. Chestnut, No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026), *appeal dismissed*, No. 26-3277, 2026 WL 2446315 (9th Cir. 2026) (finding vested liberty interest where the petitioner had lived in the United States for nearly three years and the government was aware of his presence by virtue of his asylum case but did not promptly detain him); Carrasquel v. Warden, Cal. City Immigration Processing Ctr., No. 1:26-cv-06867-DAD-JDP, 2026 WL 2621102, at *2 (E.D. Cal. Sept. 4, 2026) (same where the petitioner lived in the United States for twelve years, had been granted temporary protected status after his visa expired, and was not promptly detained after the expiration of either his visa or temporary protected status); Oliveira Tinoco v. Albarran, No. 1:26-cv-05505-DC-CKD, 2026 WL 2949219, at *5 (E.D. Cal. Oct. 1, 2026) (same for petitioner who overstayed, applied for and was denied adjustment of status, and was allowed to travel internationally before being detained); Medvezhov v. Warden, Golden State Annex Det. Facility, No. 1:26-cv-05918-KES-SAB, 2026 WL 2234501, at *2 (E.D. Cal. Aug. 3, 2026) (same where the petitioner lived freely in the United States for approximately four years and the government "deci[ded] *not* to detain [him], and instead to grant him work authorization while his asylum claim proceeded") (emphasis in original); Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release [the petitioner], it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."). The undersigned finds the reasoning in the above-referenced cases persuasive and applicable to the instant matter. As such, the undersigned finds that Petitioner has a protected liberty interest and may invoke the Due Process Clause to seek relief in his individualized circumstances.

**B. Procedures Required – Mathews Factors**

In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under

Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved, including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

i. Private Interest

Petitioner has a strong liberty interest in being free from immigration detention. “Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.” Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner lived freely in the United States for approximately 10 years, during which time he applied for asylum, worked lawfully, developed family ties, and volunteered in the community. All of these factors support his liberty interest. See Salazar v. Casey, No. 25-cv-2784-JLS-VET, 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) (“Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa.”); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149 (S.D. Cal. Oct. 1, 2025) at *10 (“Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.”).

ii. Risk of Erroneous Deprivation

The second Mathews factor is “the risk of an erroneous deprivation of [Petitioner’s] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.” Mathews, 424 U.S. at 335. “Civil immigration detention, which is ‘nonpunitive in purpose and effect[,]’ is justified when a noncitizen presents a risk of flight or danger to the community.” Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106 (E.D. Cal. 2025) (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). “The risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker.” Orozco-Salazar v. Warden, No. 5:26-cv-04555-KES, 2026 WL 2497334, at *4 (C.D. Cal. August 25, 2026).

Petitioner was given a post-deprivation bond hearing in which he bore the burden to demonstrate that he is not a danger to the community, does not threaten national security, and is

not a flight risk. See Matter of R-A-V-P-, 27 I&N Dec. 803, 804 (BIA 2020) (citing Matter of Fatahi, 26 I&N Dec. 791, 795 n.3 (BIA 2016)); Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006). Even absent any legal errors in the bond hearing,[4] offering only a post-deprivation hearing with the burden on the Petitioner risks erroneous deprivation of liberty. The undersigned agrees with other courts in this circuit that have found that the risk of erroneous deprivation is high when the noncitizen has not received a *pre*-deprivation hearing in which the *government* bears the burden to demonstrate a valid basis for detention after the government has known about the noncitizen's lack of lawful status but did not take timely action to detain them. See Oliveira Tinoco v. Albarran, 2026 WL 2949219, at *6; Kharitonova v. Albarran, 2026 WL 531441, at *3. Respondent did not allege any changed circumstances that would justify detention after declining to detain Petitioner when he filed his asylum application while out of status. Even if Respondent were to argue that the criminal arrest (for which there was no conviction) constitutes changed circumstances, a neutral adjudicator should have determined whether such changed circumstances would now render Petitioner a danger or risk of flight. See Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) ("[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial.") (abrogated on other grounds.)

iii. Government Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). Here, though, Respondent does not argue that Petitioner is a flight risk or danger to the community. They have not articulated any legitimate interest that would support arresting Petitioner without a pre-deprivation hearing in which the government would have the opportunity to present evidence that Petitioner poses a danger or risk of flight. The effort and cost required to provide Petitioner with

[4] Petitioner's reply (ECF No. 16) challenges the constitutional adequacy of the bond hearings. The undersigned declines to address such challenges, as relief is recommended on other grounds.

procedural safeguards before re-detention would have been minimal. See D. L.C. v. Wofford, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 25511, at *5 (E.D. Cal. Jan. 5, 2026) ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Indeed, "it is likely that the cost to the government of detaining [Petitioner] pending any bond hearing would significantly exceed the cost of providing [him] with a pre-detention hearing." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025).

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in detention without first demonstrating that the detention was necessary to protect the community or ensure Petitioner's appearance. The undersigned therefore concludes that a pre-deprivation hearing was required to satisfy due process. The absence of such pre-deprivation hearing violates Petitioner's due process rights.

**C. Remedy**

"[T]he purpose of habeas remedies is to put the [petitioner] back in the position he would have been in if the constitutional violation never occurred." Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). See also United States v. Stein, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.' " V.K. v. Noem, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (quoting Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)); Chowdhury v. Lyons, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections"). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. See United States v. Morrison, 449 U.S. 361, 364 (1981)

(observing "the general rule that remedies should be tailored to the injury suffered"). Because Petitioner's detention violated his due process rights, the appropriate remedy is immediate release.

## V. Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED.
2. Respondent be ORDERED to immediately RELEASE Petitioner Koby Bryant Solomon (A 232-948-671) from custody.
    a. At the time of release, Respondent shall be required to return all of Petitioner's documents and possessions;
    b. Respondent shall not impose any additional restrictions on Petitioner unless such restrictions are deemed necessary at a future pre-deprivation hearing;
3. Respondent be ENJOINED AND RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections which include, at a minimum:
    a. Pre-deprivation notice describing the change of circumstance(s) necessitating re-detention; and
    b. A timely pre-deprivation hearing at which the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight even after consideration of alternatives to detention, and at which Petitioner shall be permitted to have his counsel present.
4. The order not address the circumstances under which the government may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.
5. The Clerk of the Court be directed to serve the Mesa Verde Detention Facility with a copy of any release order.
6. Petitioner's motion for temporary restraining order be denied as moot.
7. The Clerk of the Court be directed to enter judgment in favor of Petitioner and close

this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 26, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 solo5830.imm.fnr